Michael Connett (SBN 300314)
Catherine Ybarra (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
mconnett@sirillp.com
cybarra@sirillp.com
Tel: (888) 747-4529

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

**RHIANNON HOOD**, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

**SPROUTS FARMERS MARKET, INC.**,

*Defendant*.

Case No.: '26CV5362 RSH DDL

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Rhiannon Hood ("**Plaintiff**"), individually and on behalf of all others similarly situated, brings this class action lawsuit against Sprouts Farmers Market, Inc. ("**Defendant**" or "**Sprouts**"), based upon Plaintiff's personal knowledge as to herself, the investigation of her counsel, and on information and belief as to all other matters.

## INTRODUCTION

1. Consumers who purchase food products labeled as made with a specific premium oil reasonably expect that the named oil is the sole oil used in the product. This expectation is especially strong when the product prominently features the oil on the front label *and* the ingredient list on the back identifies the oil as the *only* oil in the product.

2. Defendant manufactures, markets, distributes, and sells Sprouts brand potato chips, including products prominently labeled as "Made with 100% Avocado Oil." The labeling and ingredient statements on these products unambiguously represent to health-conscious consumers that the chips are cooked in avocado oil, and only avocado oil.

3. Avocado oil is a premium cooking oil that commands a significantly higher price than lower-cost vegetable oils such as soybean oils and seed oils. The well-documented health distinctions between avocado oil and seed oils are a primary driver of consumer purchasing decisions.

4. Consumers, including Plaintiff, purchase Sprouts Avocado Oil chip products at a premium price in order to obtain the health benefits associated with avocado oil, and to avoid the health risks associated with inferior oils. In choosing Defendant's products, customers, including Plaintiff, reasonably rely on assurances on the package labeling which represent that avocado oil is the one, and only, oil used to make the products.

5. In July 2026, a peer-reviewed scientific study published by researchers at the University of California, Davis, Department of Food Science and Technology, found that 93% of avocado oil–labeled chip products tested, including products sold under the Sprouts brand, exhibited compositional patterns inconsistent with avocado oil and consistent with substitution or dilution using inferior vegetable oils.

6. Despite Defendant representing to consumers that avocado oil is the only oil used to make certain Sprouts chips, testing reveals that these products contain oils other than avocado oil, exhibiting characteristics consistent with substitution of or dilution with vegetable or seed oils. This renders Defendant's labeling false and misleading.

7. Plaintiff and members of the proposed Class purchased Sprouts Avocado Oil chip products in reliance on Defendant's representations that avocado oil was the one and only oil used in the chips. Had Plaintiff and Class members known the products were not exclusively made with avocado oil, or not made with avocado oil at all, they would not have purchased the products and certainly would not have paid a premium price for them.

8. As a direct and proximate result of Defendant's false and misleading labeling, Plaintiff and Class members have suffered economic harm. They paid a premium price for products they believed were made exclusively with avocado oil, when in fact the products contained cheaper, less desirable oils.

## PARTIES

9. Plaintiff Rhiannon Hood lives in San Diego, California and at all times relevant to this case has been a citizen of California.

10. Ms. Hood has been regularly buying Sprouts Avocado Oil chip products since approximately August 2025 from Sprouts in San Diego County.

11. Specifically, Ms. Hood has purchased at least fourteen bags of Sprouts Kettle Style Avocado Oil potato chip products, including Honey BBQ Kettle Style Avocado Oil Potato Chips and Dill Pickle Kettle Style Avocado Oil Potato Chips. Each bag costs approximately $0.60 to $0.67 per ounce, which is significantly more expensive than non-premium oil chips.

12. Ms. Hood relied on Defendant's labeling representations that the chips were made with avocado oil, and only avocado oil, when making her purchasing

decisions. Ms. Hood would not have purchased Sprouts avocado oil chips and certainly would not have paid a premium for them had she known they were not exclusively made with avocado oil.

13. Defendant Sprouts Farmers Market, Inc. is a Delaware corporation headquartered in Phoenix, Arizona. Sprouts Farmers Market, Inc. manufactures, markets, distributes, and sells grocery and specialty food products, including the avocado oil chip products at issue in this action.

14. Defendant manufactures, markets, distributes, and sells potato and tortilla chips, including a line of products prominently labeled and marketed as "Made With 100% Avocado Oil." These products include, but are not limited to: Sea Salt Kettle Style Avocado Oil Potato Chips, Honey BBQ Kettle Style Avocado Oil Potato Chips, Sour Cream & Onion Kettle Style Avocado Oil Potato Chips, Sea Salt & Vinegar Kettle Style Avocado Oil Potato Chips, Dill Pickle Kettle Style Avocado Oil Potato Chips, Organic Sea Salt & A Hint Of Lime Tortilla Chips Made With Avocado Oil, Organic Sea Salt Blue Corn Tortilla Chips Made With Avocado Oil, and Organic Unsalted Blue Corn Tortilla Chips Made With Avocado Oil.

15. Defendant conducts substantial business in the State of California, including the marketing, distribution, and sale of Sprouts Avocado Oil chip products through retail stores, grocery stores, and online retailers accessible to California consumers.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act of 2005 (CAFA), because (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one member of the class and Defendant are citizens of

different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendant because the injuries upon which Plaintiff's claims are based occurred or arose out of activities that Defendant specifically engaged in within the State of California. Defendant knowingly and intentionally distributed and sold its Sprouts Avocado Oil chip products in California, and Plaintiff purchased said products from retail stores located here in California.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of California. Plaintiff resides in San Diego, California, which is located within this District. Plaintiff purchased the Sprouts Avocado Oil chip products at retail stores located within this District and suffered economic injury within the District as a result of Defendant's false and misleading labeling. Defendant marketed, distributed, and sold its Sprouts Avocado Oil chip products through retail stores and online channels accessible to consumers in this District.

19. In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

## FACTUAL ALLEGATIONS

### A. The 2026 UC Davis Study

20. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology, published a peer-reviewed scientific study titled "Authenticity of avocado and olive oils used as ingredients in commercially

processed foods" in the journal *Applied Food Research* (hereinafter, the "**UC Davis Study**").[1]

21. The UC Davis researchers selected 27 processed-food products that listed avocado oil as their only oil, including 14 chip products, 7 mayonnaise products, and 6 salad-dressing products.[2] They purchased two separate samples from different production lots of each product, testing a total of 54 avocado oil samples. To determine whether the samples contained authentic avocado oil, the researchers extracted the oil from each sample and examined its fatty acid and sterol profiles, which distinguish avocado oil from less desirable oils such as soybean and canola oil.[3]

22. The overall results were striking: 48 of the 54 avocado oil samples (89%) were not compositionally consistent with authentic avocado oil.[4] Among chip samples, 26 of 28 (93%) were classified as inconsistent with authentic avocado oil.[5] The chemical characteristics of these inconsistent samples were closer to cheaper vegetable oils, and one sample resembled soybean oil.[6]

23. In stark contrast, the researchers also tested 20 processed food samples labeled as made "with authentic olive oil," and 19 of the 20 (95%) were found to be

---

[1] Natalie Lopez-Alvarez et al., *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Res. 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

[2] *Id*. at 2.

[3] *Id*.

[4] *Id*. at 4.

[5] *Id*.

[6] *Id*. at 4, 6.

compositionally consistent with authentic olive oil in the finished product.[7] This dramatic disparity demonstrates that the widespread adulteration problem is specific to avocado oil products, not a general consequence of food processing.

24. The UC Davis Study employed rigorous, scientifically validated analytical methodology, including Soxhlet extraction with n-hexane, gas chromatography with flame ionization detection (GC-FID) analysis of fatty acid methyl esters and sterols, and comparison against Codex Alimentarius international standards for avocado oil composition.[8]

25. To determine if the samples tested were consistent with avocado oil, the UC Davis Study analyzed their fatty acid and sterol profiles. The avocado oil–labeled products found to be inconsistent with authentic avocado oil exhibited the following compositional anomalies: (a) low levels of fatty acids such as palmitic acid (C16:0), palmitoleic acid (C16:1), and cis-vaccenic acid (C18:1 n-7), and reduced beta-sitosterol, and clerosterol, together with elevated stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol.[9] Rather than being "characteristic of authentic avocado oil . . . this pattern is more consistent with substitution or dilution using vegetable oils."[10] Indeed, many of the avocado oil–labeled samples had fatty acid profiles that were more consistent with polyunsaturated vegetable oil compositions or comparative samples containing canola, corn, soybean, and/or sunflower oil, rather than authentic avocado oil.[11]

---

[7] *Id*. at 4.

[8] *Id*. at 2-3.

[9] *Id*. at 1.

[10] *Id*. at 4.

[11] *Id*. at 6.

26. The UC Davis Study specifically investigated whether food processing (i.e., frying) could explain the deviations observed in inconsistent samples. To do this, the researchers made potato chips in the laboratory, fried them in authentic avocado oil, extracted the oil, and tested it again but the chemical fingerprint did not meaningfully change. Laboratory frying experiments demonstrated that processing causes only minor changes in key markers; cis-vaccenic acid decreased by only 0.1% during frying, thereby confirming that processing cannot explain the substantial compositional deviations observed in the inconsistent products.[12]

27. All avocado oil products analyzed in the UC Davis Study listed avocado oil as the only oil used to make the product and did not disclose blended oil formulations.

28. Significantly, the UC Davis Study specifically tested Sprouts brand products. The samples of Sprouts Organic Sea Salt & A Hint Of Lime Tortilla Chips and Sea Salt Kettle Style Avocado Oil Potato Chips, labeled as made with avocado oil, were classified as not consistent with authentic avocado oil.[13] The UC Davis Study's findings demonstrate that the Sprouts Avocado Oil chip products contain oils other than avocado oil, despite Defendant's representations that avocado oil is the one and only oil used.

**B. Independent Third-Party Testing Corroborates the UC Davis Study's Findings Regarding Sprouts Avocado Oil Chip Products**

29. In September 2026, Plaintiff sent three newly purchased, unopened bags of Sprouts Avocado Oil chips to Isotek Laboratories, LLC ("**Isotek Labs**"), an

[12] *Id*. at 7.

[13] *See id*. Supplementary tbl. S3 (fatty acid profiles); Supplementary tbl. S4 (sterol profiles).

AOCS[14]-certified independent testing laboratory located in Oklahoma City, Oklahoma, to conduct fatty acid profile analysis on samples of Sprouts Avocado Oil chip products. Isotek Labs has "earned the trust of … industry leaders including JBS, Conagra, Smithfield Foods, Emery Oleochemicals, Sanimax, Scoular, Chevron, and ConocoPhillips."[15]

30. Ms. Hood submitted one unopened bag of each of the following Sprouts brand potato chips to Isotek Labs for testing: Sea Salt Kettle Style Avocado Oil Potato Chips, Honey BBQ Kettle Style Avocado Oil Potato Chips, and Dill Pickle Kettle Style Avocado Oil Potato Chips.

31. Isotek Labs performed fatty acid profile analysis on each sample using the AOCS Ce 1-62 analytical method, which is the same methodology recognized by the Codex Alimentarius international standards for determining fatty acid composition of edible oils. Like the UC Davis Study, the Isotek Labs analysis employed gas chromatography with flame ionization detection (GC-FID) to identify and quantify fatty acid methyl esters and compared the results against AOCS compositional ranges for authentic avocado oil. The samples were received on September 8, 2026, and the laboratory issued Certificates of Analysis for each sample on September 11, 2026.

32. The Isotek Labs testing results corroborate the UC Davis Study's findings that Sprouts Avocado Oil chip products contain oils inconsistent with avocado oil. Analysis of the fatty acid profiles revealed that all three samples

---

[14] AOCS stands for the American Oil Chemists' Society. An AOCS-certified lab is a laboratory recognized by the American Oil Chemists' Society as competent in official AOCS test methods for fats, oils, oilseeds, and related products.

[15] Isotek Labs, *Company Profile*, https://isoteklabs.com/company-profile/ (last visited Aug. 31, 2026).

exhibited the same compositional anomalies identified in the UC Davis Study as indicators of adulteration or substitution with inferior vegetable oils.[16]

33. Specifically, the Isotek Labs testing revealed critically deficient levels of palmitoleic acid (C16:1) across all three Sprouts samples. The Codex Alimentarius Commission, the FAO/WHO international food-standards body, lists a palmitoleic acid range of 4.0–17.1% for avocado oil. The AOCS reference range used by Isotek Labs is 3.0–9.0%. The Sprouts samples tested at 0.544% to 1.038% palmitoleic acid—far below both ranges.

34. The Isotek Labs testing also revealed abnormally elevated levels of stearic acid (C18:0) in all three Sprouts samples. The Codex Alimentarius Commission lists a stearic acid range of 0.1–1.3% for avocado oil. The AOCS reference range used by Isotek Labs is 0.4-1%. The Sprouts samples tested at 2.84% to 3.33%—again far outside the range of both the Codex and AOCS standards. As the UC Davis Study explained, elevated stearic acid, combined with reduced palmitoleic acid, is a compositional pattern "more consistent with substitution or dilution using vegetable oils" rather than authentic avocado oil.[17]

35. Additionally, the palmitic acid (C16:0) levels in the Sprouts samples ranged from 8.27% to 8.80%. This is below the range for palmitic acid identified by Codex Alimentarius Commission (11.0-26.0%), and also below the range identified by AOCS (9.0-18%).

36. The Isotek Labs analysis further compared the Sprouts sample results against the known fatty acid profiles of six different avocado cultivars (Hass, Fuerte, Bacon, Zutano, Reed, and Pinkerton). Even accounting for natural variability across avocado varieties, regions, and growing conditions, the palmitoleic acid and stearic

[16] *See* Lopez-Alvarez et al., *supra* note 3.

[17] Lopez-Alvarez et al., *supra* note 3 at 4.

acid levels in every Sprouts sample fell outside the compositional ranges for every avocado cultivar.

37. The Isotek findings make clear that, if avocado oil is present in Sprouts Avocado Oil chips, it is *not* the only oil. At a minimum, there is some other, inferior, oil in the chips. This conclusion is consistent with the UC Davis Study's finding that both Sprouts Avocado Oil chip samples tested by UC Davis were classified as "inconsistent with authentic avocado oil."[18] The independent Isotek Labs testing thus provides additional scientific confirmation that Defendant's Sprouts Avocado Oil chip products contain oil(s) other than avocado oil, despite Defendant's representations to the contrary.

### C. The Labeling of Sprouts Avocado Oil Chips Represents to Consumers that Avocado Oil Is the One and Only Oil Used in the Chips

38. The front label of the Sprouts Avocado Oil chip products prominently features the words "Made With 100% Avocado Oil" in large, conspicuous lettering alongside a picture of an avocado. While the design varies by flavor, the front label of each product clearly communicates to consumers that the chips are made with avocado oil, thereby distinguishing these products from conventional potato chips cooked in cheaper, lower quality, and less healthy oils.

---

[18] *See* Lopez-Alvarez et al., *supra* note 3 at 3 and 4 (Table 1).




**Figure 1.** Front label of Sprouts Sea Salt Kettle Style Avocado Oil Potato Chips.




**Figure 2.** Front label of Sprouts Honey BBQ Kettle Style Avocado Oil Potato Chips.




**Figure 3.** Front label of Sprouts Dill Pickle Kettle Style Avocado Oil Potato Chips.

39. The back label conveys the same deception as the front. The ingredient list on the back for Sprouts Sea Salt Kettle Style Avocado Oil Potato Chips identifies only "potatoes, avocado oil, sea salt." No other oils are disclosed in the ingredient list for any of Sprouts Avocado Oil chip products.







**Figure 4.** Back label of Sprouts Sea Salt Kettle Style Avocado Oil Potato Chips.





INGREDIENTS: POTATOES, AVOCADO OIL, HONEY POWDER (MALTODEXTRIN, DRIED HONEY), SALT, MALTODEXTRIN, SUGAR, TOMATO POWDER, ONION POWDER, TORULA YEAST, YEAST EXTRACT, GARLIC POWDER, PAPRIKA, CITRIC ACID, NATURAL SMOKE FLAVOR, SPICE, EXTRACTIVES OF PAPRIKA.

**Figure 5.** Back label of Sprouts Honey BBQ Kettle Style Avocado Oil Potato Chips.




INGREDIENTS: POTATOES, AVOCADO OIL, MALTODEXTRIN, SALT, SUGAR, VINEGAR, CITRIC ACID, ONION POWDER, TARTARIC ACID, YEAST EXTRACT, DILL SEED, DILL WEED, NATURAL FLAVOR, GARLIC POWDER.

**Figure 6.** Back label of Sprouts Dill Pickle Kettle Style Avocado Oil Potato Chips.

40. Defendant's marketing materials, including its website and promotional materials, promote Sprouts chips as seed oil-free chips and display them on its "See Ya Later, Seed Oils!" pages."[19] These representations are consistent with and reinforce the impression conveyed by the product labeling that avocado oil, rather than inferior vegetable oils, was the one and only oil used in the making of the chips.

41. Based on Defendant's representations—including the bold statement on the front label that chips are "Made With 100% Avocado Oil," the image of an avocado, and the ingredient list on the back that lists avocado oil as the only oil in the product—reasonable consumers, including Plaintiff and Class members, understand and expect that Sprouts Avocado Oil chips are made solely with avocado oil and contain no other oils.

**D. Consumer Motivation: Health Concerns with Inferior Vegetable and Seed Oils and the Perceived Benefits of Avocado Oil**

42. Avocado oil is a premium cooking oil that is significantly more expensive than common refined oils such as canola oil, sunflower oil, soybean oil, and corn oil. Consumers deliberately choose to pay a premium price for avocado oil products because avocado oil is perceived as healthier, more natural, and of higher quality than seed oils. They also do so to avoid the consumption of inferior vegetable oils, like soybean oil, and seed oils, including canola oil, sunflower oil, safflower oil, and corn oil, and the negative health effects associated with these oils' consumption. Thus, consumers rely on product labeling when they deliberately choose to pay more for a product because the label specifically says it is made with avocado oil.

43. This consumer motivation is a central reason why Sprouts Avocado Oil products command a premium price and why Defendant prominently markets these

---

[19] *Sprouts Farmers Market*, "See Ya Later, Seed Oils!", https://shop.sprouts.com/store/sprouts/collections/rc-sb-9b-seed-oil-free (last visited Sep. 16, 2026).

products as made with avocado oil and with the line, "See Ya' Later, Seed Oils!" Market research confirms this trend: as of 2024, over 42% of consumers in the United States reported switching from conventional oils to healthy, plant-based alternatives like avocado oil, driven by consumer awareness of its superior properties.[20] The global avocado oil market was valued at approximately $637 million in 2024 and is projected to reach over $1.1 billion by 2032, reflecting a compound annual growth rate of 6.0%.[21]

**E. Defendant's Knowledge and Intent**

44. Defendant knew or should have known that its Sprouts Avocado Oil chip products contained oils other than avocado oil. As the manufacturer of these products, Defendant has direct knowledge of and control over the ingredients used in its manufacturing process.

45. Defendant knew or should have known that its labeling representations, including the prominent "Made with 100% Avocado Oil" designations on the front, and the ingredient list on the back declaring avocado oil as the only oil in the product, were false and misleading.

46. Defendant intentionally chose to label its products as avocado oil chips and to charge a premium price based on this premium characteristic. Defendant did so because it knew that consumers would pay more for products they believed were made solely with premium avocado oil.

---

[20] *Avocado Oil Market Size, Share, Growth, and Industry Analysis, By Type*, Market Reports World, https://www.marketreportsworld.com/market-reports/avocado-oil-market-14716152 (last visited September 16, 2026).

[21] *Global Avocado Oil Market Size, Share, and Trends Analysis Report – Industry Overview and Forecast to 2032*, Data Bridge Mkt. Rsch., https://www.databridgemarketresearch.com/reports/global-avocado-oil-market (last visited September 16, 2026).

47. Defendant is no doubt aware that consumer preference for avocado oil is also driven by "clean label" trends and the growing consumer demand for foods made with natural, minimally processed, and transparently sourced ingredients. Market research confirms that "[r]ising demand for clean-label nutrition, premium culinary ingredients, and natural formulation inputs accelerates adoption of avocado oil across food manufacturing, retail consumption, and cosmetic innovation."[22] Consumers "increasingly evaluate nutritional value, ingredient transparency, and cooking performance," and avocado oil "is emerging as a preferred solution" because its nutritional profile "aligns with dietary preferences focused on heart health and natural nutrition."[23] "Health-focused consumers increasingly seek cooking oils rich in monounsaturated fats and antioxidants, while food companies leverage avocado oil to develop premium products that meet modern dietary expectations."[24]

48. Products labeled with avocado oil command a significant price premium over comparable products formulated with seed oils. The UC Davis Study found that chips labeled with avocado oil sold for up to 222% more than the sale price of chips made with conventional oils.[25] This price premium reflects consumer willingness to pay more for products labeled as made with avocado oil that they reasonably believe contain authentic avocado oil and its associated health benefits. However, the UC Davis researchers noted that "retail price alone was not a reliable indicator of

---

[22] *Growing Demand for Clean-Label Cooking Oils Accelerates the Global Avocado Oil Market*, PR Newswire (Jan. 2026), https://www.prnewswire.co.uk/news-releases/growing-demand-for-clean-label-cooking-oils-accelerates-the-global-avocado-oil-market--future-market-insights-302708127.html.

[23] *Id.*

[24] *Id.*

[25] *See* Lopez-Alvarez et al., *supra* note 3 at 4.

ingredient authenticity and consumers cannot rely on price alone as an indicator of authenticity."[26] Defendant, as a market participant selling avocado oil products at premium prices, knew or should have known that consumers purchasing such products reasonably expected that avocado oil was the one and only oil used in its chips and relied on Defendant's labeling to deliver that expectation.

49. Defendant's false and misleading labeling and marketing was designed to, and did, induce consumers, including Plaintiff and Class members, to purchase the Sprouts Avocado Oil chip products and to pay a premium price for those products based on the false belief that they would enjoy the benefits of chips cooked solely in avocado oil.

## CLASS ALLEGATIONS

50. Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff brings this action on behalf of the following putative class (hereafter, "**Class**"): All persons in California who purchased Sprouts Avocado Oil chip products within the applicable statutes of limitation.

51. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors; those who purchased Sprouts Avocado Oil chip products for resale; those who make a timely election to be excluded from the Class; and the judge to whom the case is assigned and any immediate family members thereof.

52. The Class Period begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, knowing concealment, and accrual issues, and ends on the date of entry of judgment.

---

[26] *Id.*

53. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

54. **Numerosity**: The members of the Class are so numerous that joinder of all class members is impracticable. On information and belief, there are, at a minimum, hundreds of thousands of Class Members who purchased Sprouts Avocado Oil chip products during the Class Period. Sprouts Avocado Oil chips are sold at Sprouts grocery stores, online from Sprouts websites, or via third party delivery services such as Instacart throughout the United States. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

55. **Predominance of Common Questions of Law and Fact**: Questions of law and fact that are common to the members of the Class predominate over questions that are specific to individual members. These common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant's labeling of Sprouts Avocado Oil chip products as being made with avocado oil, and only avocado oil, is false and/or misleading;

b. Whether Defendant's Sprouts Avocado Oil chip products contain oils other than avocado oil, including inferior vegetable and/or seed oils;

c. Whether Defendant's knew or should have known that their product labeling is false and/or misleading;

d. Whether Defendant's conduct violates the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, et seq.), California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.), and

California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.);

e. Whether Defendant was unjustly enriched;

f. Whether Plaintiff and Class members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's deceptive and unlawful conduct; and

g. Whether Plaintiff and Class members are entitled to relief and, if so, the nature of such relief.

56. **<u>Typicality</u>**: Plaintiff's claims are typical of those of other Class Members because, like all members of the Class, Plaintiff purchased Sprouts Avocado Oil chip products bearing the same false and misleading labeling and relied on the same material misrepresentations regarding the oil content of those products.

57. **<u>Adequacy</u>**: Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interest which conflicts with those of the Class. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

58. **<u>Superiority</u>**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy for the following reasons:

a. The economic loss suffered by each individual member of the Class does not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would pose a crushing burden on the court system for these cases to be litigated on an individual basis;

c. Absent a class action mechanism, Plaintiff and Class members will continue to suffer harm as a result of Defendant's unlawful conduct because individual litigation is wholly impractical and cost prohibitive; and

d. This action presents no difficulty that would impede its management by the Court as a class action.

## <u>FIRST CAUSE OF ACTION</u>

**Violation of the Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, et seq.**
(On Behalf of the California Subclass)

59. Plaintiff incorporates the preceding paragraphs as if fully written herein.

60. Plaintiff brings this claim individually and on behalf of the California members of the Class.

61. Plaintiff and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d), and Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's avocado oil chip products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and Plaintiff's and Class members' purchases of such products constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

62. The Consumer Legal Remedies Act ("**CLRA**") prohibits the following:

a. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Cal. Civ. Code § 1770 (a)(5).

b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Cal. Civ. Code §§ 1770(a)(7).

c. "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code §§ 1770(a)(9).

d. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code § 1770(a)(16).

63. Defendant violated these provisions by misrepresenting to Plaintiff and Class members that its Sprouts Avocado Oil chips are made using 100% avocado oil. This is false and misleading because the UC Davis Study and independent third-party testing show that if avocado oil is even present in the chips, it is *not* the only oil. The other oil(s) present in the product are *not* disclosed on the label. The label thus simultaneously provides the false impression that avocado oil is the only oil, while concealing/suppressing that other, inferior, oils are present.

64. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

65. Defendant's false and misleading representations were uniform and made with the intent to deceive Plaintiff and Class members. At all relevant times, Defendant knew or reasonably should have known that the avocado oil representations on its packaging were false and deceptive, and that consumers would reasonably rely on them when purchasing the products. Nonetheless, Defendant persisted in making these representations to deceive consumers into believing they were buying products made with avocado oil and only avocado oil.

66. Plaintiff and Class members justifiably relied on Defendant's misleading representations when purchasing Sprouts Avocado Oil Chips. Based on the materiality of Defendant's deceptive conduct, reliance may be presumed.

67. Plaintiff and Class members have suffered injury because: (a) they would not have purchased Sprouts Avocado Oil chips, or would have paid less, had they known the avocado oil representations were false; (b) they paid a price premium for products they believed were made exclusively with avocado oil; and (c) the products did not have the characteristics, ingredients, or benefits as represented.

68. Under Cal. Civ. Code § 1780(a), Plaintiff and Class members seek injunctive and equitable relief for Defendant's violations of the CLRA.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, et seq.**
(On Behalf of the California Subclass)

69. Plaintiff incorporates the preceding paragraphs as if fully written herein.

70. Plaintiff brings this claim individually and on behalf of the California members of the Class.

71. California's False Advertising Law ("**FAL**"), Cal. Bus. & Prof. Code § 17500, et seq., makes it unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement concerning personal property or services which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

72. As described above, Defendant's labeling of its Sprouts Avocado Oil chip products is deceptive in that it falsely conveys that the chips are made using avocado oil, and only avocado oil, when testing reveals they contain other undisclosed oils.

73. As a sophisticated food manufacturer, Defendant knew or by the exercise of reasonable care should have known, that its representations were untrue

and misleading. Defendant intentionally designed its packaging to induce consumers to rely on its false representations and purchase the products. Defendant has violated the FAL.

74. Plaintiff and Class members have suffered injury and lost money as a result of Defendant's false and misleading representations. Specifically, Defendant's deceptive statements caused Plaintiff and Class members to (i) purchase products they would not have purchased absent the deception, and (ii) pay a premium price they would not have paid had they known that Defendant's representations were false.

75. As a result of Defendant's false advertising, it has and continues to unlawfully obtain money from Plaintiff and Class members. Through its violations of the FAL, Defendant has been unjustly enriched, and continues to be unjustly enriched, by unfairly obtaining money from Class members.

76. Based on Defendant's false advertising practices, Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including restitution of profits unfairly obtained as a result of Defendant's unlawful business practices; declaratory relief; injunctive relief; reasonable attorney's fees, and all other relief that the Court deems proper.

## THIRD CAUSE OF ACTION

**Violations of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, et seq.**

(On Behalf of Plaintiff and the California Subclass)

77. Plaintiff incorporates the preceding paragraphs as if fully written herein.

78. Plaintiff brings this claim individually and on behalf of the California members of the Class.

79. California's Unfair Competition Law ("**UCL**"), Cal. Bus. & Prof. Code § 17200, et seq., provides, in pertinent part, that "unfair competition shall mean and

include unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to bring a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

80. Plaintiff has standing to pursue this claim as she has suffered an injury in fact and lost money or property as a result of Defendant's acts and practices as described herein. In particular, Plaintiff purchased and paid a price premium for Sprouts Avocado Oil chip products based on Defendant's false and misleading representations. Had Defendant disclosed to Plaintiff that the products were not made with only avocado oil as advertised, Plaintiff would not have purchased the products or would have paid less for them.

81. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq.

82. Defendant's labeling of Sprouts Avocado Oil chip products is "unlawful" under the UCL because it violates the CLRA and FAL. As a result, Defendant has unlawfully obtained money from Plaintiff and Class members.

83. Under the UCL, a practice is "unfair" and Defendant's actions constitute unfair business practices if Defendant's conduct, misrepresentations and omissions, offend an established public policy or are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, as the benefits of committing such acts or practices are outweighed by the gravity of the harm resulting therefrom. Defendant's conduct was and continues to be misleading, unfair, unlawful, and injurious with no benefit to consumers who rely on Defendant's packaging and false and misleading representations. Defendant's deception, inducing consumers into believing that its Avocado Oil chip products are made only with avocado oil, when they are not, is of no benefit—and is substantially injurious—to consumers. As a

result of its unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and Class members.

84. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consumer public. Defendant's conduct was and continues to be fraudulent because it has deceived consumers into believing Sprouts Avocado Oil chip products are made with avocado oil, and only avocado oil.

85. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent acts and practices, Defendant has received and continues to hold as ill-gotten gains money and property belonging to Plaintiff and Class members.

86. Plaintiff requests that the Court enjoin Defendant from violating the UCL as described herein. Injunctive relief is necessary and appropriate to prevent Defendant from repeating or continuing their wrongful business practices.

87. Pursuant to Cal. Bus. & Prof. Code § 17203 the Court may restore to any person in interest any money or property acquired by means of unfair, deceptive, and fraudulent business practices. Plaintiff and Class members seek restitution, injunctive relief, attorneys' fees and all other relief that the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully requests that the Court enter judgment against Defendant as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class counsel and Plaintiff as Class Representative;

B. An award of compensatory damages in an amount to be determined at trial;

C. An award of restitution and/or disgorgement in an amount to be determined at trial, except as to those causes of action where restitution/disgorgement is not available by law;

D. An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available by law;

E. An award of treble damages, except as to those causes of action where treble damages are not available by law;

F. An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available by law;

G. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H. For reasonable attorneys' fees and the costs of suit incurred; and

I. For such further relief, including but not limited to declaratory and injunctive relief, as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial for all claims so triable.

Dated: September 17, 2026

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

By: *Michael Connett*
Michael Connett (SBN 300314)
Catherine E. Ybarra (SBN 283360)
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
Tel: (213) 297-3807
E: mconnett@sirillp.com
E: cybarra@sirillp.com

*Attorneys for Plaintiff and the Putative Class*